IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SABRINA HOLDER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:20-cv-00310 ) |
| AT&T SERVICES, INC., | ) JUDGE RICHARDSON ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Sabrina Holder, a pro se Tennessee resident, filed a Complaint against AT&T Services, Inc. ("AT&T"). She has been granted pauper status. The Original Complaint (Doc. No. 1) and two Amended Complaints (Doc. Nos. 11, 12) are before the Court for a screening under the standard for cases filed in forma pauperis. And for the following reasons, this action will be dismissed.

**I.     Initial Review**

The Court must dismiss this action if it is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). The Court also must hold pro se pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

    **A.     Summary of Factual Allegations**

        **1.     First Lawsuit**

Plaintiff alleges that AT&T began "illegally surveill[ing]" her in 2008 when she filed a "complaint of race discrimination and a workman compensation claim." (Doc. No. 11 at 2

(unaltered from original).) This surveillance allegedly took place both at work and "outside the workplace using dark tinted cars and trucks following [Plaintiff] everywhere [she went]." (*Id.*)

In 2011, Plaintiff filed suit against AT&T in this Court "for racial discrimination, harassment/retaliation and wrongful termination." (*Id.* (citing Case No. 3:11-cv-00076 [hereinafter *Holder I*]).) As Plaintiff points out, Waverly Crenshaw, Jr., was a counsel of record for AT&T in *Holder I* before becoming a United States District Judge. (*Id.* at 5; *Holder I*, Doc. No. 27 (M.D. Tenn. Sept. 5, 2012) (Notice of Appearance).) District Judge Aleta Trauger dismissed *Holder I* in January 2015 for Plaintiff's failure to prosecute. *Holder I*, Doc. No. 247 (M.D. Tenn. Jan. 28, 2015). Plaintiff appealed, and the Sixth Circuit dismissed the appeal in December 2015. *Id.*, Doc. No. 270 at 2 (M.D. Tenn. Dec. 29, 2015).

### 2. Surveillance Following First Lawsuit

Plaintiff alleges that AT&T has conducted surveillance of her and her family for the past several years in retaliation for filing *Holder I*. (Doc. No. 11 at 2.) She attaches several supporting exhibits. (*Id.* at 10–31.) She alleges that AT&T used a private investigation company (G4S Investigations), a private investigator (Mitch Davis of TSCM Surveillance), and various "young cohorts" to do things like wiretap her phone, track her car using a GPS device, and follow her in vehicles from the time she leaves home until she returns. (*Id.*) The "cohorts" have posed as construction workers to take pictures using body cameras, walked by Plaintiff in Walmart, and "walk[ed] down the street passing in front of [her] window, watching as they go by." (*Id.*) On one occasion, three young men "parked in front of [Plaintiff's] house, got out, pointed to [her] home, dressed in red shirts and black pants, showing gang signs and dancing while the other[s] took pictures, then g[ot] back in the car and s[at] for about 3 minutes [before] leav[ing]." (*Id.*)

In May and June 2019, Plaintiff alleges several encounters with a "black [Dodge] challenger." (*Id.* at 3.) On three occasions, each about a week apart, this vehicle "blew [its] horn at [Plaintiff]," "paused at [Plaintiff's] bedroom window," or "paused in front of [Plaintiff's] house." (*Id.*) After that, Plaintiff noticed "different color challengers, Camaros and [a] dodge charger" following her. (*Id.*) Plaintiff recorded these license plate numbers when possible. (*Id.*) Without explaining the person to whom she is referring, Plaintiff also alleges that "this individual would follow by walking past, may speak wearing body cameras." (*Id.* (unaltered from original).)

On November 15, 2019, Plaintiff filed a police report "stating it was AT&T." (*Id.*) The police did not follow up, and Plaintiff alleges that she "was told if [she] think[s] it was AT&T that it was a civil matter." (*Id.*)

On November 18, 2019, Plaintiff searched Google for "surveillance companies in Nashville" and called the first result—TSCM. (*Id.*) Plaintiff said she was the subject of surveillance and was told that "Mitch" would call back. (*Id.*) Mitch soon called Plaintiff and told her to come talk to him and bring the license plate numbers, and "to call the Dillon Agency because he was not surveillance." (*Id.*) Plaintiff alleges that she knew Mitch was involved at that point, because she "only told the police not Mitch regarding license plate numbers, 3 days prior." (*Id.*)

Plaintiff alleges that she spoke with John from the Dillon Agency, who stated that Mitch "does some work for" AT&T. (*Id.*) Mitch then admitted to working for AT&T. (*Id.*) Plaintiff "immediately noticed these cars license plates changing, some to temporary tags different from regular temporary car tags, out of state etc." (*Id.* (unaltered from original).) Plaintiff alleges that "the faces" did not change, "so [she] studied the facial structures." (*Id.*)

Plaintiff alleges that she worked through a staffing agency, and "cohorts" infiltrated the agency to watch and sabotage her at places of employment, including through "defamation, gossip

and negative job referencing." (*Id.* at 3–4.) On November 18, 2019, Plaintiff started working for Phillips and noticed three "cohorts," before being terminated with "very little training" on December 30. (*Id.* at 3.) Plaintiff also alleges that she was terminated by AIG and Change Healthcare within two months after managers did not train her or sabotaged her. (*Id.* at 4.)

On January 9, 2020, Plaintiff attended a volunteer training class for "CASA" and noticed five "cohorts." (*Id.*) Around the third class, Plaintiff took a video of the cohorts on her cell phone, and two did not return. (*Id.*) Plaintiff alleges that she "finished the class as well as they did and yet [she] was still being followed to and from class by other cohorts." (*Id.*)

On February 18, 2020, during an interview at Caterpillar, Plaintiff saw two "cohorts walk by the glass office looking at [her]." (*Id.*) She "saw two more on the first day of training." (*Id.*) "[A]t the end of the week," a person working security "who looked very familiar" told her that "he and others were working for a staffing agency" and that "he worked for G4S." (*Id.*) Through Internet research, Plaintiff found alleged connections between G4S and AT&T. (*Id.* at 4–5.)

### 3. EEOC Proceedings

On January 2, 2020, Plaintiff filed an EEOC Discrimination Charge against AT&T. (Doc. No. 1 at 2, 4.) She asserted a retaliation claim under Title VII, alleging as follows: "From December 2015 and continued, I have been retaliated and harassed for filing prior harassment charges against Respondent and the union. I[']m unable to maintain employment because I believe the Respondent has placed me under surveillance." (*Id.* at 4.) The EEOC dismissed the Charge and issued a right-to-sue letter dated January 7, 2020. (Doc. No. 11 at 9.)

### 4. This Lawsuit

In April 2020, Plaintiff filed the Original Complaint (Doc. No. 1), and this case was randomly assigned to Judge Crenshaw. Judge Crenshaw granted Plaintiff pauper status and

instructed her to file an Amended Complaint, as the Original Complaint did not provide sufficient information to determine whether the case could proceed. (Doc. No. 5.) In a subsequent Motion for an Extension of Time, Plaintiff referenced a "conflict of interest." (Doc. No. 6 at 1.) Judge Crenshaw recused himself (Doc. No. 7), and the case was randomly reassigned to the undersigned.

Plaintiff then filed two Amended Complaints. (Doc. Nos. 11, 12.) Liberally construing the complaints together, the Court understands Plaintiff to be asserting the following claims:[1]

1. Fraud on the Court during *Holder I* (Doc. No. 12 at 1);
2. Title VII harassment (Doc. No. 11 at 1, 6);
3. Title VII retaliation (*id.*);
4. Intrusion of solitude / constitutional right to privacy (Doc. No. 1 at 2; Doc. No. 11 at 6);
5. Tortious interference (Doc. No. 1 at 2; Doc. No. 11 at 5–6);
6. Invasion of privacy through intrusion upon seclusion (Doc. No. 1 at 2; Doc. No. 11 at 6);
7. False light invasion of privacy (Doc. No. 1 at 2);
8. Intentional infliction of emotional distress (*id.*);
9. Negligent infliction of emotional distress (*id.*); and
10. Defamation of character (Doc. No. 11 at 6).

Plaintiff requests monetary damages and a protective order. (*Id.* at 7.)

### B. Legal Standard

To determine whether the pleadings withstand screening under 28 U.S.C. § 1915(e)(2)(B), the Court applies the Rule 12(b)(6) standard. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and]

---

[1] This list of Plaintiff's apparent claims does not include Plaintiff's assertions of "Surveillance" (Doc. No. 1 at 2), "Negative Job Reference" (Doc. No. 11 at 6), "GPS Tracking / Wiretapping" (*id.*), and "Blacklisting" (Doc. No. 12 at 1), which the Court considers to be shorthand references to factual predicates for liability rather than standalone claims.

'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not extend to allegations consisting of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

### C. Analysis

#### 1. Fraud on the Court

The Court first addresses Plaintiff's entirely baseless claim of fraud on the court during *Holder I*. "Fraud on the court refers to 'the most egregious conduct involving a corruption of the judicial process itself,'" such as "bribing a judge, employing counsel to exert improper influence on the court, and jury tampering." *Gen. Med., P.C. v. Horizon/CMS Health Care Corp.*, 475 F. App'x 65, 71 (6th Cir. 2012) (quoting 11 Charles A. Wright et al., FED. PRAC. AND PROC. § 2870 (West 2011)). To demonstrate fraud upon the court, a party must prove, by clear and convincing evidence, that there was "conduct: '1) on the part of an officer of the court; that 2) is directed to the judicial machinery itself; 3) is intentionally false, willfully blind to the truth, or is in reckless disregard of the truth; 4) is a positive averment or a concealment when one is under a duty to disclose; and 5) deceives the court.'" *Johnson v. Bell*, 605 F.3d 333, 339 (6th Cir. 2010) (quoting *Carter v. Anderson*, 585 F.3d 1007, 1011–12 (6th Cir. 2009)).

Plaintiff alleges that she "did not get along" with AT&T's attorneys during *Holder I*, and she filed several motions regarding their "behavior." (Doc. No. 11 at 5.) In the memorandum and order of dismissal, Judge Trauger noted that the four-year course of litigation included several discovery disputes and requests for extensions. *Holder I*, Doc. No. 247 at 2. By the end of the case, Judge Trauger found that Plaintiff's "failure to cooperate in discovery" had become "willful and

in bad faith." *Id.* at 13. Judge Trauger thoroughly summarized defense counsel's efforts to take Plaintiff's deposition and found that Plaintiff's failure to appear for a third properly noticed deposition in violation of court orders justified dismissing the case. *Id.*, Doc. No. 247 at 2–17.

Although Plaintiff accused AT&T's counsel of dishonesty throughout *Holder I*, the record reflects that both the Magistrate Judge and Judge Trauger rejected those attacks as baseless. *See Holder I*, Doc. No. 247 at 4 n.1; *id.* at 9–10 & n.3. Indeed, Judge Trauger could not have been more clear in stating that the "accusations of misconduct by the defendants' counsel are without evidentiary support." *Id.* at 15.

The Court concludes that Plaintiff's renewed allegations of misconduct add nothing to those previously rejected by Judge Trauger. Because Plaintiff has not plausibly alleged that counsel engaged in fraud on the court during *Holder* I, this claim will be dismissed is frivolous.

Moreover, Plaintiff demonstrates clear disrespect for this Court and Chief Judge Crenshaw by alleging that Judge Crenshaw "would find ways to thwart the litigation process and dismiss" this case, and by stating that she is "concerned about [Judge Crenshaw's] influence behind the scenes." (Doc. No. 11 at 5.) Plaintiff has not credibly alleged any action of concern by Judge Crenshaw—who is not involved in this case—or any other Judge of this Court. Plaintiff is cautioned against making any future unfounded accusations regarding this Court. Plaintiff does not have to like every (or even any) decision this Court makes, and she is entitled to her own opinion. But Plaintiff is not entitled to level, in court filings, whatever accusations she wishes to make irrespective of whether they have any support whatsoever.

    **2.**    **Title VII**

As to Title VII, Plaintiff alleges that AT&T retaliated against her, over the past several years, for filing *Holder I*. "Title VII's antiretaliation provision extend[s] to former employees."

*E.E.O.C. v. SunDance Rehab. Corp.*, 466 F.3d 490, 500 (6th Cir. 2006) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 339 (1997)). To state a Title VII retaliation claim, Plaintiff must allege "that: (1) she engaged in activity protected under Title VII; (2) [AT&T] knew that she exercised her protected rights; (3) an adverse employment action was subsequently taken against her; and (4) [Plaintiff's] protected activity was the but-for cause of the adverse employment action." *Kenney v. Aspen Tech., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020) (citing *Laster v. City of Kalamazoo*, 746 F.3d 714, 730–31 (6th Cir. 2014)).

Here, Plaintiff satisfied the first two elements by filing and litigating *Holder I*, a suit asserting claims against AT&T under Title VII. But Plaintiff's allegations are too implausible to establish elements three and four.

To satisfy the third element, a plaintiff must allege "that a 'reasonable employee would have found the employer's challenged action materially adverse,' or in other words, that the challenged action 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Queen v. City of Bowling Green, Ky.*, 956 F.3d 893, 903 (6th Cir. 2020) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

Plaintiff alleges that AT&T targeted her with a years-long campaign of harassment, surveillance, and economic sabotage. And upon infiltrating the staffing agency Plaintiff uses to find work, Plaintiff alleges, AT&T's "cohorts" "carr[ied] out acts of defamation, gossip and negative job referencing causing the employer to terminate [Plaintiff's] job through blacklisting." (Doc. No. 11 at 2.) While sabotaging a former employee's future economic prospects may form the basis of a retaliation claim, *see Taylor v. Geithner*, 703 F.3d 328, 339 (6th Cir. 2013) (citing *Abbott v. Crown Motor Corp.*, 348 F.3d 537, 543 (6th Cir. 2003)), Plaintiff's allegations do not "provide the factual context that would render them plausible and thus entitle them to a

presumption of trust at this stage in the litigation." *See Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 374 (6th Cir. 2011) (citations omitted).

Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). Plaintiff's allegations clearly reflect the belief that, on several specific occasions, individuals have been watching or following Plaintiff at the behest of AT&T—some disguised as construction workers, some posing as co-workers at places of employment, some simply walking by at the store or at home. However, Plaintiff does not supply enough concrete factual allegations to elevate that dubious belief above the plausibility threshold. *See Marshall v. Staffieri*, No. 3:09-CV-448-S, 2009 WL 2476556, at *2 (W.D. Ky. Aug. 11, 2009) (citations omitted) (finding allegations that are the product of "delusional or paranoid thinking" to be "implausible"); *see also Iqbal*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570) ("He would need to allege more by way of factual content to 'nudg[e]' his claim . . . 'across the line from conceivable to plausible.'")

In sum, Plaintiff's allegations that AT&T orchestrated a prolonged surveillance campaign against her in retaliation for filing *Holder I* are "conclusory and bare," so they are not entitled "to the presumption of truth." *Ctr. for Bio-Ethical Reform*, 648 F.3d at 374 (citing *Iqbal*, 556 U.S. at 681); *see also Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (explaining that "paranoid pro se litigation" that "alleg[es] a vast, encompassing conspiracy" "must meet a high standard of plausibility"). Accordingly, Plaintiff does not state a plausible Title VII claim against AT&T.

### 3. Constitutional Right to Privacy

Plaintiff also asserts a claim for "intrusion of solitude / constitutional right to privacy." This claim faces the same plausibility problems as the Title VII claims discussed above.

Additionally, Plaintiff has not established a basis for the Court to consider a direct constitutional claim against AT&T under either of the two methods for doing so: *Bivens* and 42 U.S.C. § 1983.

"In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, the Supreme Court created a private right of action for damages against federal officers who are alleged to have violated a citizen's constitutional rights." *Marie v. Am. Red Cross*, 771 F.3d 344, 364 (6th Cir. 2014) (citing *Bivens*, 403 U.S. 388, 397 (1971)). Here, regardless of their plausibility, Plaintiff's allegations do not reflect that AT&T was acting under color of federal law. Moreover, "it is well established that *Bivens* actions may not be asserted against . . . private corporations." *Id.* at 365 (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70–74 (2001)). Accordingly, Plaintiff cannot use *Bivens* to bring a "constitutional right to privacy" claim against AT&T.

Meanwhile, "Section 1983 provides a remedy against any person acting under color of state law for 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Howell v. Father Maloney's Boys' Haven, Inc.*, --- F.3d ----, 2020 WL 5833246, at *1 (6th Cir. Oct. 1, 2020) (quoting 42 U.S.C. § 1983). "Only claims against 'state actors' are eligible for relief under the statute." *Id.* (citing *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 940 (1982)). This requirement "typically excludes private parties from the statute's reach." *Rudd v. City of Norton Shores, Mich.*, --- F.3d ----, 2020 WL 5905062, at *5 (6th Cir. Oct. 6, 2020) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). There are three exceptions whereby a plaintiff may impose liability on a private party by fairly attributing that party's conduct to the state. *See Weser v. Goodson*, 965 F.3d 507, 516 (6th Cir. 2020) (quoting *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003)). But Plaintiff makes no allegations that AT&T's conduct was attributable to the state in any way, so she cannot hold AT&T liable under Section 1983.

####    4.    State Law Claims

As explained above, Plaintiff fails to state a claim under federal law. The Court therefore declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. 28 U.S.C. § 1367(c)(3) ("The district court[] may decline to exercise supplemental jurisdiction over a claim . . . if [it] has dismissed all claims over which it has original jurisdiction."); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (citations omitted) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims."). Accordingly, the Court will dismiss without prejudice Plaintiff's claims for tortious interference, invasion of privacy through intrusion upon seclusion, false light invasion of privacy, intentional infliction of emotional distress, negligent infliction of emotional distress, and defamation of character.

**II.    Conclusion**

For these reasons, this action is **DISMISSED**, and the Court **CERTIFIES** that any appeal in this matter would not be taken in good faith. 28 U.S.C. § 1915(a)(3). Plaintiff's federal-law claims are dismissed with prejudice, and her state-law claims are dismissed without prejudice. The Court makes no representations regarding the viability of any state law claims Plaintiff may file in state court.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE